**Vernon DOMINIQUE, Individually and as father and next friend of Carol Dominique, a minor, Appellant,**

v.

**RALPH D. KAISER COMPANY, INC., et al., Appellees.**

No. 83–884.

District of Columbia Court of Appeals.

Submitted March 26, 1984.

Decided July 23, 1984.

John A. Turner, Jr., Washington, D.C., was on the brief for appellant.

William D. Foote, Jr., Washington, D.C., was on the brief for appellees.

Before BELSON, TERRY, and ROGERS, Associate Judges.

**PER CURIAM:**

This is an appeal from a judgment in favor of appellees, defendants below, after a non-jury trial in an action for negligence. The sole issue on appeal is whether the trial court erred in denying appellant's motion for a jury trial, filed twenty months after the complaint. We need not decide whether the court committed error, because even if there was error, we would have to find it harmless. Accordingly, we affirm the judgment.

## I

One afternoon in March 1979, as seven-year-old Carol Dominique was on her way home from school, she was struck by a car while crossing New York Avenue at Fourth Street, N.W. Fortunately, her injuries were not serious, although her leg was broken. The car was owned by appellee Ralph D. Kaiser Company and driven by appellee Harry Stern, a Kaiser employee. In the months that followed, appellees' insurer and appellant Vernon Dominique, Carol's father, agreed upon compensation for the expenses resulting from Carol's injuries. Rather than simply paying appellant the agreed amount in exchange for a release from liability, however, appellees' counsel arranged to have appellant file suit against appellees, intending then to settle. *See* D.C.Code § 21–120(a) (1981).[1] Appellees' counsel drafted a complaint for appellant, who was not represented by counsel. Appellant signed the complaint, and on March 5, 1980, counsel filed it along with the answer he had also prepared. Understandably, the complaint did not include a demand for a jury trial.

Soon thereafter appellant retained counsel, who entered an appearance on his behalf on April 15. Counsel then advised the court that the planned settlement would

---

1. D.C.Code § 21–120(a) provides:

    A person entitled to maintain or defend an action on behalf of a minor child, including an action relating to real estate, is competent to settle an action so brought and, upon settlement thereof or upon satisfaction of a judg- ment obtained therein, is competent to give a full acquittance and release of all liability in connection with the action, *but such a settlement is not valid unless approved by a judge of the court in which the action is pending.* [Emphasis added.]

not take place after all, and a lengthy discovery period began. Over eighteen months later, on November 6, 1981, appellant's counsel filed a motion for a jury trial which stated that counsel had "inadvertently" failed to notice that no jury demand had been previously made. The court denied the motion in a three-sentence order, giving no reasons for its ruling. A motion for reconsideration was later denied in an order which stated that appellant's failure to file a timely request for a jury trial, as required by Super.Ct.Civ.R. 38(b), constituted a waiver under Super.Ct.Civ.R. 38(d),[2] "even considering the fact that the defendant's attorney drafted the original complaint." An appeal from that ruling was dismissed for lack of jurisdiction.[3]

Eventually the case went to trial before another Superior Court judge. The evidence established that Carol Dominique and her older sister, Natalie, were walking home from school when some other children began to throw rocks at Natalie because of an earlier disagreement in the classroom. After the two girls had crossed to the island in the middle of New York Avenue at Fourth Street, N.W., Natalie told Carol to go home and get their mother. Carol started across the northern half of the street and was struck by a westbound car in the curb lane. Natalie testified that when she dispatched Carol, the traffic light was still green for Fourth Street. She acknowledged on cross-examination, however, that she had looked at the light first, before sending Carol home to get their mother, and that she had not actually seen

the car strike her sister. Carol's testimony on direct examination confirmed Natalie's account. On cross-examination, however, Carol was impeached with a deposition in which she had said that the light changed as she was crossing, and that she tried nevertheless to get all the way across. At first Carol disavowed her deposition statement, but eventually she testified that it was true.[4]

The principal defense witness was Herman Carroll, an eyewitness to the accident. Mr. Carroll testified that he was in his car in the center lane of westbound traffic on New York Avenue at Fourth Street, waiting for the red light to turn to green. After the light changed, he started to move when suddenly some children, whom he had seen earlier on the corner, ran in front of his car. He stopped immediately, but a car in the curb lane to his right hit Carol Dominique "almost instantly." Mr. Carroll's testimony was clear that the children ran in front of his car after the light changed. There were cars in all three westbound lanes of traffic, and Carol was not very tall; Mr. Carroll stated that she was "just about level" with the hood of his Dodge Dart. Finally, he testified that the driver of the car that hit Carol "couldn't have been going too fast in order to stop in the distance that he stopped in."

Appellee Stern, whose car hit Carol, testified that he was driving west on New York Avenue in the curb lane at about twenty-five or thirty miles per hour. When he was

2. Super.Ct.Civ.R. 38 provides in pertinent part:

(b) *Demand.* Any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than ten days after the service of the last pleading directed to such issue. Such demand may be indorsed upon a pleading of the party. In addition, the party demanding a jury trial must, at the time of the demand, pay to the Court the fee provided in Rule 202.

\* \* \* \* \* \*

(d) *Waiver.* The failure of a party to serve a demand as required by this Rule and to file it as required by Rule 5(d) and to contempo-

raneously pay the jury fee constitutes a waiver by him of trial by jury ....

3. *Dominique v. Ralph D. Kaiser Co.,* No. 82–1279, order entered December 6, 1982 (unpublished).

4. Vernon Dominique testified about Carol's medical expenses, and the actual medical bills were introduced into evidence by stipulation. Mr. Dominique also stated that Natalie had told him that she did not see the car hit Carol, and he agreed with defense counsel's observation that Carol "did not remember the specifics of the accident either ...."

about a quarter-block away from the intersection of New York Avenue and Fourth Street, he noticed that the light had turned green. As he entered the intersection, however, he saw some children running in front of his car and heard the squeal of brakes from the car on his left. He slammed on his own brakes, but he could not stop in time to avoid striking Carol. Mr. Stern said that the cars in the two lanes to his left obstructed his view of the children who appeared in front of his car. He also stated that he drove through that neighborhood regularly and knew that there was a school nearby, but that at the time of the accident he was not exercising any more caution than usual.

After closing arguments by counsel, the trial court ruled that appellant had not met his burden of establishing by a preponderance of the evidence that Mr. Stern was negligent, and that judgment would therefore be entered for appellees. On this appeal no error is claimed with respect to the trial; the only assignment of error deals with the denial of the pre-trial motion for trial by jury, which was not renewed before the trial judge.

## II

■■ The Seventh Amendment to the Constitution guarantees the right to a trial by jury in "suits at common law, where the value in controversy shall exceed twenty dollars ...." *See generally Pernell v. Southall Realty*, 416 U.S. 363, 94 S.Ct. 1723, 40 L.Ed.2d 198 (1974). It has been universally recognized, however, that the right to a jury trial may be waived. The waiver need not be knowing and intelligent in order to be effective; the right may be waived by the mere "failure to comply with reasonable rules," even if that failure is unintentional. "If the rule be clear, reasonable and known, a party failing to observe it must abide the result of his violation." *Kass v. Baskin*, 82 U.S.App.D.C.

385, 387, 164 F.2d 513, 515 (1947); *see* 9 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2321 (1971). Such a reasonable rule is Super.Ct.Civ.R. 38, quoted in footnote 2, *supra*. Failure to serve and file a timely jury demand under Rule 38(b), and to pay the required fee at the same time, constitutes a waiver of the Seventh Amendment right under Rule 38(d).

■ Another rule makes clear, however, that a Rule 38(d) waiver is not absolute:

> [N]otwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the Court in its discretion upon motion may order a trial by a jury of any or all issues.

Super.Ct.Civ.R. 39(b). While this court has not explicitly established guidelines for the exercise of discretion under this rule, the factors to be considered include the possibility of prejudice to other parties and the likelihood of delay attendant upon a sudden switch from a non-jury to a jury trial. *See Technical Institute of America, Inc. v. Nygard*, 291 A.2d 183, 184 (D.C.1972) (upholding denial of a request for jury trial when the change from non-jury to jury would have resulted in "very substantial delay"); *Ledman v. G.A.C. Finance Corp.*, 213 A.2d 246, 248 (D.C.1965) (finding abuse of discretion in denial of jury trial "where no delay or prejudice to [the non-moving party] was shown"). Delay and prejudice, however, are not the only factors which may affect the decision on a Rule 39(b) motion. "In exercising [its] discretion, the court may consider all elements pertinent to the interests of both parties and also to the general conduct of the business of the court. ... [It is not] limited to a determination of conscious intent on the part of the non-observing [party] and to the presence or absence of prejudice to the [other party]." *Kass v. Baskin, supra*, 82 U.S. App.D.C. at 389, 164 F.2d at 517.[5]

---

**5.** One factor which clearly does not enter into the decision on a Rule 39(b) motion is the requirement of Super.Ct.Civ.R. 15(a) that leave

to amend a complaint "shall be freely given when justice so requires." The amendment of a pleading which raises no new issues does not

## III

Appellant argues that the motions judge abused his discretion when he denied the motion for a jury trial. We note, first of all, that neither party's motion papers mentioned Rule 39(b) even though this was the rule that made the motion possible in the first place. It is true that the judge's brief order sheds no light on how, if at all, he exercised his discretion in this regard. *See generally Johnson v. United States*, 398 A.2d 354, 363–366 (D.C.1979); *Garces v. Bradley*, 299 A.2d 142, 144–145 (D.C.1973). However, under the circumstances presented here, we need not determine whether the motions judge abused or failed to exercise his discretion. *See Ledman v. G.A.C. Finance Corp., supra*, 213 A.2d at 248 (trial court has discretion to allow jury trial on later motion). This is so because we have determined that there was no role for a jury to play in this case.

■ The trial judge, after hearing all the evidence, ruled that appellant had not met his burden of proof by a preponderance of the evidence. The only evidence which tended to show that Mr. Stern was negligent was Natalie Dominique's testimony that the light was still green for Fourth Street traffic when Carol crossed New York Avenue. That testimony was fatally undermined by Natalie's admission that she looked at the traffic light before Carol started across the street, not after. On the other side of the issue was Carol's deposition testimony, which at trial she admitted was true, that the light changed when she got "halfway across" and was "in the middle" of the street, *i.e.*, on the island. The testimony of both Mr. Carroll and Mr. Stern was to the same effect. Viewing the evidence as a whole, we conclude that it would have been error to send this case to a jury because no reasonable trier of fact could have found that Mr. Stern was negligent. Had this been a jury trial, the court would have been required to enter a directed verdict for appellees. Therefore, since a jury would have had no opportunity to perform its function, the pre-trial denial of appellant's motion for a jury trial, even if we assume an abuse of discretion or a failure to exercise discretion, was necessarily harmless.

## IV

■ Finally, appellant contends that because appellees' counsel drafted his complaint, which contained no demand for a jury trial, appellees were estopped from opposing his motion for a jury trial. If the failure to make a timely demand were an absolute bar to a jury trial, we would no doubt find this argument compelling. An estoppel occurs when one party's conduct enables it to assert an absolute bar to another party's rights, as for example when a litigant raises the statute of limitations after inducing his opponent to delay bringing the action.[6] In this case, however, there is no absolute bar; because of Rule 39(b), a waiver under Rule 38(d) does not foreclose the possibility of a jury trial. The safety valve provided by Rule 39(b) takes the steam out of appellant's estoppel argument.

*Affirmed.*

TERRY, Associate Judge, concurring:

I agree that the judgment must be affirmed, although I reach that result by a slightly different route from that taken by my colleagues. To me it is clear that the motions judge erred in denying the motion for a jury trial. It is also clear, however,

---

require a court to order a jury trial if a timely demand for one was not made. *E.g., Railex Corp. v. Joseph Guss & Sons, Inc.*, 40 F.R.D. 119 (D.D.C.1966), *aff'd*, 127 U.S.App.D.C. 230, 382 F.2d 179 (1967); *see* 9 Wright & Miller, *supra*, §§ 2320–2321. *A fortiori*, a tardy demand for a jury trial cannot revive the waived right by being disguised as an amendment of a pleading.

6. *Centennial Insurance Co. v. Dowd's, Inc.*, 306 A.2d 648, 651 (D.C.1973); *Property 10–F, Inc. v. Pack & Process, Inc.*, 265 A.2d 290, 291 (D.C. 1970); *McCloskey & Co. v. Dickinson*, 56 A.2d 442, 444–445 (D.C.1948); *Hornblower v. George Washington University*, 31 App.D.C. 64, 75 (1908).

that the error was harmless for the reasons stated in part III of the per curiam opinion. I therefore join in voting to affirm. In addition, I write separately to make some observations on a point not discussed by my colleagues, because appellant's estoppel claim focuses attention on an aspect of this case which I find troubling.

I

In reviewing a decision on an issue committed to a trial judge's discretion, this court must look first to see whether the judge was aware that he had that discretion and, if so, whether he purported to exercise it. "Failure to exercise choice in a situation calling for choice is an abuse of discretion ... because it assumes the existence of a rule that admits of but one answer to the question presented." *Johnson v. United States*, 398 A.2d 354, 363 (D.C. 1979) (citation omitted). In this case I am convinced that the judge who ruled on appellant's motion for a jury trial abused his discretion by not recognizing that he had any discretion to grant the motion.

As the per curiam opinion points out, neither the motion for a jury trial nor the opposition to that motion made any reference to Super.Ct.Civ.R. 39(b). Furthermore, no hearing was held on the motion, and the order denying it stated no reasons for the denial. If that were the entire record, it would be difficult to find an abuse of discretion.[1] The order denying the motion for reconsideration, however, makes plain that the judge was unaware that he had any discretion under Rule 39(b) to rule in appellant's favor. The judge concluded that appellant's "failure to file [his] request for a jury trial timely as required by [Rule] 38(b) constituted a waiver under Rule 38(d) of his right to a trial by jury ...." The only reasonable interpretation I can place on this language is that the judge apparently viewed the waiver under Rule 38(d) as an absolute bar to a jury trial.

Rule 39(b), which empowered the judge to grant a jury trial despite the waiver, is not even mentioned; instead, the order clearly implies that the waiver tied the court's hands. I cannot help concluding, as this court held in *Johnson, supra*, that the judge's failure to recognize that he had discretion was itself an abuse of discretion. Nevertheless, that abuse does not require reversal because, as my colleagues have stated, *supra* at 323, "there was no role for a jury to play in this case."

II

At the time the complaint was drafted for appellant by appellees' attorney, appellant was not represented by counsel. This situation presents at least the possibility of an ethical violation. Disciplinary Rule 7–104(A) of our Code of Professional Responsibility provides in part:

> During the course of his representation of a client a lawyer shall not:
>
> \* \* \* \* \* \*
>
> (2) Give advice to a person who is not represented by a lawyer, other than the advice to secure counsel, if the interests of such person are or have a reasonable possibility of being in conflict with the interests of his client.

Whether the drafting of a complaint, in the factual context of this case, constitutes "giving advice" to an unrepresented adversary is a question which need not be decided here. There is no contention that the conduct of appellees' counsel was in any way unethical. On the contrary, from the record it appears that the parties reached an agreement to settle the case and then turned to the attorney to perform the ministerial act of preparing and filing the complaint. In *Stamenich v. Markovic*, 462 A.2d 452, 456 n. 8 (D.C.1983), this court concluded on similar facts that there was no conflict of interest.

---

**1.** The long delay by appellant's counsel in filing his motion for a jury trial—more than a year and a half after he entered his appearance— would, on this record, provide ample basis for denial of the motion.

Even so, DR 7-104(A)(2) should at least cause an attorney to hesitate and pause before drawing up a complaint to be filed in the name of an unrepresented party against that attorney's own client. The fact that when the complaint was filed, all the parties may have regarded this proceeding as a "friendly" suit does not dispel the shadow cast by the disciplinary rule; adversaries in a legal action should not be quite so friendly. If it is common practice for the Superior Court, because of D.C. Code § 21-120(a),[2] to accept pleadings from unrepresented parties which have actually been prepared by counsel for their opponents,[3] the court may wish to consider an alternative procedure for complying with the statute—such as, for example, the appointment of a guardian *ad litem* to protect the interests of the unrepresented minor child. Any practice whereby a defendant's attorney actually drafts his unrepresented adversary's complaint is fraught with obvious potential for abuse. That there was no abuse in this particular case does not abate my concern.

I reiterate that on the record in this case there is no reason to believe, and I do not believe, that appellees' counsel acted improperly. In another case the record may not be so clear, and the consequences may be more serious.

---

**2.** See footnote 1 of the per curiam opinion, *supra* at 320.

**3.** Counsel apparently felt obliged under D.C. Code § 21-120(a) to seek judicial approval of the proposed settlement. Although this statute does not expressly require judicial scrutiny of settlements reached before a claim is formalized by the filing of a civil action, a wise attorney would be well advised to seek court approval of any *settlement involving a minor child*, even if no other court action is contemplated. By settling the child's claim through the filing of a civil action, as was done in this case, the attorney would obtain a judgment and thereby foreclose any later action by or on behalf of the child.